UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARREL WAYNE VANDERGRIFF,

    Plaintiff,

    v.

LYNNE DeLANO, *et al.*,

    Defendants.

Case No. C06-5062 RBL/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**June 22, 2007**

    This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b) and Local MJR 3 and 4.  Plaintiff alleges that Defendants subjected him to cruel and unusual punishment, have denied him access to courts, are tampering with his mail, wrongfully transferred him, and wrongfully searched his cell and seized his property.  Defendants move for summary judgment dismissal of Plaintiff's claims against them.  (Dkt. # 99).  After careful review of Defendants' motion, Plaintiff's opposition (Dkt.# 100), Defendants' reply (Dkt. # 101), and the parties' summary judgment evidence, the undersigned recommends that Defendants' motion be granted, in part and denied in part.

## I.  STATEMENT OF FACTS

    The following facts are undisputed, except where specifically noted:

REPORT AND RECOMMENDATION - 1

**A.    Plaintiff's Transfers**

Plaintiff was transferred to the Olympic Corrections Center (OCC) on October 17, 2005 and then to Clallam Bay Corrections Center (CBCC) on February 2, 2006 so that he could have access to a law library. (Dkt. # 99, Exh. 1, Attach A at 3).  He was retained at CBCC for being a disciplinary problem and was transferred to Cedar Creek Corrections Center (CCCC) on March 22, 2006.  (*Id.*) Plaintiff states he was not a disciplinary problem.  (Dkt. # 100, Exh. 1 at 2). Upon his arrival at CCCC, Plaintiff requested to be transferred to a facility that had a bigger law library.  (*Id.*, Exh. 4). Plaintiff was sent to Stafford Creek Corrections Center (SCCC) on March 30, 2006, where he spent approximately one week in segregation "for protection."  (Dkt. #100, Exh. 1 at 3).  Plaintiff was then transferred to Monroe Corrections Center (MCCC) on April 10, 2006.  (Dkt. # 99, Exh. 1, Attach. A at 3).

During this latter transfer process, Plaintiff claims denial of access to courts when he was separated from his legal materials for approximately three weeks and he was forced to seek continuances from deadlines with the Washington State Court of Appeals and the U.S. District Court in this case. (Dkt. # 100, Exh. 1 at 3).  Plaintiff currently resides at Airway Heights Corrections Center (AHCC).  He was transferred there for library use from the Coyote Ridge Correction Center on January 30, 2007.  (Dkt. # 99, Exh. 1, Attach. A at 3).

**B.    DOC Policy Regarding Legal Mail Processing**

Offenders may send and receive legal mail to certain individuals and entities. (Dkt. # 99, Exh. 2, Attach. A).  Legal mail may be sent to or from courts and court staff, attorneys, the President, state attorneys general, governors and law enforcement officers. (*Id.* at 6).  The mail is presented to a staff member so it can be scanned for contraband.  (*Id.* at 8). After it is determined that the mail is free of contraband, the inmate places the documents in the envelope and seals it. (*Id.*).  The staff member signs the flap and seals it with tape and the inmate places the envelope in the mail.  (*Id.*). Petitions to the Governor's Clemency and Pardons Board are not considered legal mail and will not be processed as such. (*Id.*).

Incoming mail is also inspected to make sure it does not contain contraband or anything that would threaten the safety and security of the institution and that mail marked "legal mail" is, in fact, legal mail. (*Id.* at 7). Incoming mail is opened in the presence of the offender.  (*Id.*)  An offender is not permitted to have more than one photocopy of a document.  (*Id.*, Exh. 2, Attach. A).  An offender is not permitted to have more than one photocopy of a document because the inmate could distribute the copies to other inmates, it would cause unnecessary clutter in an inmate's cell and it would be difficult to track where the copies went without knowing how many copies an offender started with. (*Id.*).

**C.    DOC Policy Regarding Access to Legal Materials and Law Library**

DOC policy permits offenders to keep one box of legal materials in their cell at any given time. (Dkt. # 99, Exh. 2, Attach. B). The box measures 12"x10"x18".  (*Id.*).  Exceptions to the

REPORT AND RECOMMENDATION - 2

policy may be granted only upon written request to the Superintendent. (*Id*). Legal materials are limited to maintain adequate sanitary conditions, meet storage space, reduce fire hazards and provide reasonable ease for conducting security inspections. (*Id*., Exh. 2, Attach. C). The Superintendent may also limit an individual's access to legal materials based on the inmate's behavior, security and other security issues in the unit. (*Id*.). An inmate may not place non-legal materials with legal materials. (*Id*.). Doing so will cause the items to be confiscated as contraband. (*Id*.). When an offender moves from one institution to another, he has the responsibility to arrange for the transport of the property. (*Id*. Exh. 2, Attach. D, DOC Policy 440.020). He is allowed to take two boxes of materials with him, free of charge. (*Id*.). One of those boxes may be legal materials, if necessary. (*Id*.).

The smaller DOC institutions do not have full law libraries. OCC and CCCC are two of the smaller work camps without law libraries. If an inmate needs materials, there are some available onsite and he can request to use the satellite law library. (*Id*., Exh. 3, Attach. A). If the inmate requires greater resources than those that are available, the offender can request to be transferred to an institution with a larger law library. (*Id*.).

## D.     Excessive Force by Defendants Barnes and Bernard

Plaintiff alleges he was assaulted by two staff members while at CBCC. On March 8, 2006, the Plaintiff was in the law library when Defendant Barnes noticed that there was contraband in the Plaintiff's legal folder. (Dkt. # 19, Appendix F, Initial Serious Infraction Report dated March 8, 2006). When Defendant Barnes instructed the Plaintiff to remove the contraband, the Plaintiff threw the correction tape box (or his identification card) at Defendant Barnes and it struck her in the arm. (*Id*.). Plaintiff disputes that he threw the correction tape box or that anything struck Defendant Barnes' arm. *See* Dkt. # 100, Exh. 1 at 3. At that time, he was taken to the Intensive Management Unit and infracted. (*Id*.).

In support of his claims, Plaintiff filed his declaration containing factual statements which the Court is required to accept as true for purposes of this summary judgment motion. Plaintiff states that while he was handcuffed, Defendants Barnes, "prompted" by his superior, Defendant Foulkes, roughly rammed his shoulder into a doorway, and Defendant Bernard struck him in his scrotum more than once, and when he complained, they threw him in the hole. (Dkt. # 19 at 24). Plaintiff states that he "did suffer physical as well as mental abuse at the hands of Defendants Barnes and Bernard and their immediate supervisor who was present." (Dkt. # 100, Declaration of Plaintiff at 1). Plaintiff also states that Defendant Foulkes told Defendant Bernard "to be rough with me," and told Escort Staff to "be careful not to let Vandergriff trip and fall and hurt himself as its real slick out there." (*Id*.). When Plaintiff attempted to complain to Defendant Foulkes, Plaintiff states Defendant Foulkes "just laughed and said "[s]ue me so I can get a day off with pay." (*Id*.).

In response, Defendant Foulkes states that he "did not prompt anyone to assault" the Plaintiff, nor did he hear the Plaintiff request medical assistance while he was being transported to the IMU on that day. (Dkt. # 99, Exh. 5). Plaintiff states that there is documentation in his medical file that he complained of foot, back and shoulder pain after this incident. (Dkt. # 100, Declaration of

REPORT AND RECOMMENDATION - 3

1    Plaintiff at 4).[1]

2

3    **E.    Searches of Plaintiff's Cell**

4        Inmates' cells are subject to random searches for contraband. (Dkt. # 99, Exh. 2, Attach. E).
     Inmates do not need to be present during these searches. (*Id.*).   Legal materials are also searched for
5    contraband. (*Id.*).  Items that are considered contraband are confiscated from the cell. (*Id.*).
     Contraband includes another inmate's property or unauthorized medications. (*Id.*, Exh. 2,
6    Attachment D).  Plaintiff's cell was searched on March 10, 2006.  Plaintiff had a note that belonged
7    to Richard Cubley, another inmate, and other medications in his cell. (Dkt. # 19,  Appendix C).
     These items were confiscated pursuant to DOC policy. (*Id.*).  Plaintiff states that the note belonging
8    to Richard Cubley was an address of a friend and that the note was later returned to him by
     Defendant McTarsney.  (Dkt. # 100, Exh. 1 at 3).
9

10

11                                      **II. STANDARD OF REVIEW**

12       Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

13   depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

14   there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

15   law."  Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the

16   nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

17   nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1985).

18       There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a
19
     rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*
20
     *Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence,
21
     not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute
22

23

24   _____

25       [1]Plaintiff's factual statements, which are accepted as true for purposes of this summary
     judgment motion, and Defendant Foulkes' denial that he saw anything happen raise material issues of
26   fact precluding summary judgment on this claim.  *See* discussion below at III.C.  Contrary to
     Defendants' assertion at p. 4 of its Reply (Dkt. # 101), Plaintiff is not required to provide supporting
27   documentation.  His declaration is considered as evidence for purposes of this motion.

28   REPORT AND RECOMMENDATION - 4

over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 253 (1986); *T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626,

630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must

consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Service Inc.*,

809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

party only when the facts specifically attested by the party contradicts facts specifically attested by the

moving party. *Id.*

The nonmoving party may not merely state that it will discredit the moving party's evidence at

trial, in hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Service Inc.*, 809

F.2d at 630 (relying on *Anderson, supra*).  Conclusory, nonspecific statements in affidavits are not

sufficient, and "missing facts" will not be "presumed."  *Lujan v. National Wildlife Federation*, 497

U.S. 871, 888-89 (1990).

### III.  DISCUSSION

**A.     Defendants Delano, Barnes and Bernard Should be Dismissed As They Have Not Been Served Pursuant to Fed. R. Civ. P. 4(m)**

A defendant must be served in accordance with Fed. R. Civ. P. 4 or there is no personal

jurisdiction over that defendant. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (citation

and footnote omitted). Notice without proper service is insufficient to convey jurisdiction**.** *Id.*

Apparently, the Plaintiff paid the filing fee in this case.  (Dkt. # 1).  Plaintiff must ensure that the

Defendants in this case are properly served in compliance with Fed. R. Civ. P. 4.

REPORT AND RECOMMENDATION - 5

Fed. R. Civ. P. 4(m) provides that if service is not made within 120 days of the filing of the complaint, the court "shall dismiss the action without prejudice as to that defendant or direct that service be affected within a specified time." Fed. R. Civ. P. 4(m).  The Amended Complaint in this case was filed on May 31, 2006.  (Dkt. # 19).   It has been more than 120 days and Defendants DeLano, Barnes and Bernard have not been served. Accordingly, this Court does not have personal jurisdiction over those Defendants and they should be dismissed without prejudice.

**B.      Standard of Proof Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58

(1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Each defendant must have personally participated in the acts alleged. *Id*. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

Plaintiff claims that he was subjected to cruel and unusual punishment, was denied access to courts, that Defendants are tampering with his mail, that Defendants have wrongfully transferred him, and that Defendants wrongfully searched his cell and improperly seized his property.

**C.      Plaintiff's Eighth Amendment Rights Claims**

It is only "'the unnecessary and wanton infliction of pain' . . . [which] constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986), *citing Ingram v. Wright*, 430 U.S. 651 (1977). "[T]he question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320-321. Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*; whether the force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1 (1992). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Whitely*, 475 U.S. at 321.

Plaintiff contends that his Eighth Amendment rights were violated when Defendant Bernard, "prompted" by his superior, Defendant Foulkes, roughly rammed his shoulder into a doorway while

REPORT AND RECOMMENDATION - 7

1    he was handcuffed, and Defendant Barnes struck him in his scrotum more than once, and when he

2    complained they threw him in the hole. (Dkt. # 100). Plaintiff also contends that Defendants took

3    his medically approved insoles without cause, and he was deprived of the use of his insoles for a

4    period of several weeks before he could have them replaced. (*Id*.) Plaintiff also alleges that his

5    safety was placed at risk when he was transferred to SCCC by Defendants Stewert, Allen, Russel,

6

7    and Killingsworth even though they were all aware that he had "safety/Separtee concerns." (Dkt. #

8    100, Declaration of Plaintiff at 2).

9            Reviewing all the facts in the light most favorable to Plaintiff, the undersigned concludes that

10   Plaintiff has established a material issue of fact of whether prison officials used excessive force that

11   constitutes cruel and unusual punishment with regard to his allegation that Defendant Bernard,

12

13   "prompted" by his superior, Defendant Foulkes, roughly rammed his shoulder into a doorway while

14   he was handcuffed, and Defendant Bernard struck him in his scrotum more than once, and when he

15   complained they threw him in the hole. (Dkt. # 100, Declaration of Plaintiff at 1). Plaintiff states

16   that he "did suffer physical as well as mental abuse at the hands of Defendants Barnes and Bernard

17

18   and their immediate supervisor who was present." (*Id*.). Plaintiff also states that Defendant Foulkes

19   told Defendant Bernard "to be rough with me," and Defendant Foulkes told Escort Staff "be careful

20   not to let Vandergriff trip and fall and hurt himself as its real slick out there." (*Id*.). When Plaintiff

21   attempted to complain to Defendant Foulkes, Plaintiff states Defendant Foulkes "just laughed and

22   said "[s]ue me so I can get a day off with pay." (*Id*.).

23            In response, Defendant Foulkes states that he "did not prompt anyone to assault" the

24

25   Plaintiff, nor did he hear the Plaintiff request medical assistance while he was being transported to the

26   IMU on that day. (Dkt. # 99, Exh. 5).

27            Viewing the allegations in the light most favorable to the Plaintiff, the undersigned concludes

28   REPORT AND RECOMMENDATION - 8

that the Plaintiff has presented evidence which creates a material factual dispute.  The only evidence provided by Defendants is that Defendant Foulkes did not verbally direct anyone to assault Plaintiff and did not hear Plaintiff request medical assistance during the time he was being taken to IMU. This is not sufficient to warrant a grant of summary judgment in favor of Defendants.  Plaintiff has provided sufficient evidence supporting a factual dispute surrounding his claim that Defendants used excessive physical force against him while he was handcuffed causing him to suffer physically and emotionally.  This requires a judge or jury to resolve the differing versions of the truth.

However, Plaintiff has provided no evidence, medical or otherwise, to show that he has suffered physical or mental injury or how his physical or mental injury was proximately caused by any deliberate indifference of the Defendants by the withholding of his insoles.  Plaintiff states that they were returned to him after several weeks.  (Dkt. # 19 at 24).  Plaintiff states only that he suffered persistent pain due to the willful withholding of his insoles.  (Dkt. # 100, Declaration of Plaintiff). This is insufficient to withstand summary dismissal.  To withstand summary dismissal, a prisoner must not only allege he was subjected to unconstitutional conditions, he must allege facts and provide evidence sufficient to indicate that the officials were deliberately indifferent to his complaints.

Finally, Plaintiff alleges that his transfer to SCCC, where he was having well-known "separatee" issues, was deliberate.  However, there is no evidence before the Court that such a move was retaliatory or to endanger Plaintiff's safety.  The evidence reflects only that Plaintiff was transferred to SCCC on March 30, 2006 and transferred out on April 10, 2006. (Dkt. # 99, Exh. 1, Attach A at 3).  Plaintiff alleges that he was placed in segregation "for protection," for one week before being transferred to MCC.  (Dkt. # 100, Exh. 1 at 3).  Thus, Plaintiff's evidence indicates that Defendants took steps to protect him while he was housed at SCCC.   An entry in the DOC Offender

REPORT AND RECOMMENDATION - 9

Based Tracking System reflecting Plaintiff's transfers indicates that Defendants noted the "separatee" issues at SCCC upon Plaintiff's arrival at SCCC, placed him in segregation because of it, and arranged for his transfer to MICC.  (Dkt. # 99, Exh. 4, Attach. A at 3).

Plaintiff has established material facts evidencing that Defendants Barnes, Bernard and Foulkes used excessive physical force against him which caused him harm.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment be denied as to Plaintiff's allegations of excessive force against Defendants Barnes, Bernard and Foulkes and granted as to Plaintiff's remaining Eighth Amendment claims.

**D.      Plaintiff's Access to the Courts Claim**

Inmates possess a fundamental constitutional right of access to courts in order to contest the fact, duration and conditions of their confinement. *Bounds v.* Smith, 430 U.S. 817, 822-23 (1977). However, the provision of law libraries and legal assistance are just two methods by which a state can provide inmates meaningful access to the courts. *Lewis v.* Casey, 518 U.S. 343, 349-5 (1996). The Constitution does not require that prisoners be able to conduct generalized research," but rather, "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions or their confinement." *Id* at 355, 360.  This right does not extend beyond the initial pleading phase. *Cornett v. Donovan*, 56 F.3d 894 (9th Cir. 1995).

In order to establish a violation of the right of access to courts, an inmate must have standing. Standing in an access to courts claim requires that an inmate allege both that he was denied access to legal materials or advice and that this denial harmed his ability to pursue non-frivolous legal action; that is, the inmate must show actual injury.  An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical

sense." *Lewis*, 518 U.S. at 351. Actual injury results from "some specific instances in which an inmate was actually denied access to the courts." *Sands v. Lewis*, 886 F.2d 1166, 1170-71 (9th Cir. 1989).

The right of access is not unlimited and encompasses only a reasonably adequate opportunity for inmates to file non-frivolous legal claims challenging their convictions or conditions of confinement. *Lewis*, 518 U.S. at 351. Inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id*. at 355.  In addition, a demonstration of actual injury does not automatically result in a right of access violation. *Lewis,* 518 U.S. at 353.  A prison regulation impinging on inmates' constitutional rights, even a right of access to the courts, is valid if it is reasonably related to legitimate penological interests. *Id.*

Plaintiff has three separate "access" claims.  First, he claims that he should not have been housed at institutions without law libraries and that, due to the many transfers to institutions with law libraries, he was placed under time constraints and was forced to seek extensions of time for court deadlines.  (*See, e.g.,* Dkt. # 100, Exh. 1 at 2).  Second, Plaintiff alleges that he has been denied access to the Court because mail from his private investigator, which contained his petition to the Clemency and Pardons Board, should have been handled by the Defendants as "legal mail," but was not.  He also alleges that Defendant Stevens refused to make the appropriate number of copies of his petition and his petition was returned to him because of this and was subsequently denied.  (Dkt. # 100, Exh. 1 at 1).   Third, Plaintiff alleges that the DOC grievance system is not meaningful and is biased.  (*Id*. at 4).

**1.     Access to Law Libraries / Extensions of Time**

Plaintiff alleges that during the time he was being transferred to facilities with law libraries, he was forced to seek continuances from deadlines with the Washington Court of Appeals and with this Court. Plaintiff provides no evidence of any missed deadlines or injury suffered. In particular, Plaintiff provides no evidence of any extensions or deadlines of any Court of Appeals case. However, if Plaintiff received such extensions and was able to timely file his documents, his allegations show that he was able to meet his court imposed deadlines and was not damaged. In this case, for example, Plaintiff states that he was forced to obtain an extension of a deadline to amend his complaint. Plaintiff was granted leave to amend. (Dkt. # 18). In fact, Plaintiff has not been penalized or suffered any injury or delay in this case.

Plaintiff also claims that he has been denied discovery in this case. (Dkt. # 100, p. 4). This is incorrect. Plaintiff's motion for an extension of the discovery deadline was denied by this Court because he had failed to conduct any discovery in the preceding six months. Although Plaintiff complained that he did not have access to a law library, Plaintiff offered no explanation of why he needed access to a law library to conduct discovery, nor did he describe what discovery he required from Defendants and he failed to confer in good faith with Defendants' counsel prior to filing his discovery motion. (Dkt. # 96).

Plaintiff attaches a number of documents to show that he had problems accessing the courts while he was housed at CBCC and OCC. (Dkt. # 19, Attach. E). However, none of the documents he provides show that he was unable to meet any court imposed deadline or that he was damaged from failing to meet any court imposed deadline. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment on this issue.

**2 (a).   "Legal Mail" from Private Investigator/to Clemency Board**

Plaintiff also claims that he has been denied access to the Court because mail from his private investigator and to the Governor's Legal Affair Coordinator, which contained his petition to the Clemency and Pardons Board, should have been handled as "legal mail."

Defendants respond that Plaintiff's mail was rejected because seven copies of one document were sent in to CBCC and inmates are not allowed to have more than one copy of any document sent in through the mail system. (Dkt. # 99, Exh. 2).  Photocopies are limited because the documents can be transferred to other inmates, it is difficult to trace the copies, and they increase the clutter in an inmate's cell. (*Id.*)   In addition, petitions to the Clemency and Pardons Board are not considered legal mail and are not processed as legal mail.  (*Id.*, Exh. 2, Attach. A).  Such petitions do not challenge an inmate's sentence or the conditions of his confinement. (*Id.*).  Legal mail is not processed in the same manner as regular mail. (*Id.*).  Legal mail requires an officer to scan the mail for contraband, entering the sender and recipient in a mail log, signing and sealing the envelope and mailing the mail out.  (*Id.*).  It is limited to those entities that need to have privileged communications or other legal communications with an inmate. (*Id.*).  Specifically, attorneys, courts, court staff, governors, The President or Vice President and law enforcement officers in their official capacity may send and receive legal mail. (*Id.*).  This is to limit the time spent processing legal mail to those that actually need to have it processed as such.  (*Id.*).

Even assuming that the DOC Mail Policy, which does not consider Plaintiff's application to the Clemency and Pardons Board as "legal mail," has a chilling effect on Plaintiff's First Amendment right to petition the government for redress of grievances, a prison may adopt regulations and take actions that infringe on an inmate's constitutional rights if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone v. The Estate of Shabazz*, 482 U.S. 342 (1987). There are four factors to consider when determining the reasonableness of a

prison regulation: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it", (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there exists an obvious alternative to the regulation "that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* at 89-91 (internal quotations omitted).

There is no question that DOC's policy of inspecting incoming and outgoing mail is justified to prevent criminal activity and to maintain prison security. *See, e.g., O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996).   The DOC has a legitimate penological interest in searching incoming and outgoing mail and limiting those entities that qualify as legal mail recipients to legal entities such as attorneys and courts involved in an inmate's judicial proceedings.  Excluding private investigators and the Clemency and Pardons Board is not unreasonable.

After viewing the evidence in the light most favorable to the Plaintiff, the undersigned concludes that Plaintiff is unable to satisfy the essential element of actual harm to prevail on an access to courts claim with regard to this legal mail issue.  Plaintiff is not prohibited from sending and receiving his mail through regular mail channels and treating mail from his private investigator or the Clemency and Pardons Board as "legal mail" would require staff to process more legal mail, which would result in unnecessary increased administrative costs.  Therefore, the undersigned agrees that Defendants are entitled to judgment as a matter of law on this issue.

**2(b).   Petition to Clemency and Pardons Board - Lack of Photocopies**

REPORT AND RECOMMENDATION - 14

Plaintiff also claims that Defendants refused to make the required number of copies that the Governor's office required for his clemency petition and that his petition was subsequently denied because he failed to submit the appropriate number of copies.  (Dkt. # 100 at 2).  Other than his own declaration, Plaintiff has provided no proof that his petition was denied.  In addition, Plaintiff's exhibits reflect that Shelby Hultman, Legal Affairs Coordinator of the Office of the Governor, advised Plaintiff on January 9, 2006, that if Plaintiff was unable to acquire the necessary copies, he need only send the original petition to the Governor's office and the copies would be made for him at no charge.  (Dkt. # 19, Appendix B).  On January 12, 2006, Superintendent Karen Brunson responded to Plaintiff's Kite of January 8, 2006, advising that a petition for clemency is not considered a legal pleading per DOC 590.500, and therefore, would not qualify for photocopying under the policy.  (*Id.*).

Accordingly, the undersigned concludes that Plaintiff has failed to demonstrate that any failure of Defendants to provide him with necessary photocopies has resulted in violation of his constitutional right of access to courts.

### 3.     Plaintiff's Grievances/Access to Courts

Defendants argue that inmates have no constitutional right to a prison grievance system and that if a state elects to provide a grievance mechanism, violations of its procedures do not give rise to § 1983 claims. *Hoover v. Watson, supra, Brown v. Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994); *Allen v. Wood*, 970 F. Supp. 824, 832 (E.D. Wash. 1997).   However, the right of meaningful access to the courts does extend to established prison grievance procedures. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989).  *See also Hines v. Gomez*, 853 F.Supp. 329, 331-332 (N.D. Cal. 1994) (and cases cited therein).  The "government" to which the First Amendment guarantees a right of redress of grievances includes the prison authorities, as it includes other administrative arms

REPORT AND RECOMMENDATION - 15

and units of government.  *Sorranno's Gasco, Inc. V. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Moreover, in some cases a prisoner may be required to exhaust the prisoner grievance procedure before securing relief in federal court.  *See* 42 U.S.C. § 1997 *et seq*.  In those cases, a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system.

However, Plaintiff has not provided any summary judgment evidence reflecting that any of his grievances were mishandled or not properly reviewed.  Plaintiff states only that one of his grievances was not responded to in "over a year" and that "many examples of Grievance responses shown to be biased."  (Dkt. # 100 at 3, Exh. 1 at 4).  These type of conclusive, unsupported allegations do not raise genuine issues of material fact sufficient to survive summary judgment.  Plaintiff has provided no evidence of how his civil rights have been violated or how he has been injured or prejudiced by the conduct of any of the Defendants.  Accordingly, the undersigned recommends that Defendants are entitled to summary judgment on this issue as well.

**E.      Plaintiff's Mail "Tampering" Claim**

Plaintiff alleges that Defendants Reetz, Gibbs, Woody and Shaw do not treat his Legal Mail as Legal Mail.  (Dkt. # 100, Exh. 1 at 2; Dkt. # 19, Exh. 3).  Essentially, Plaintiff complains that his legal mail is being open and read outside his presence.  The exhibits attached to his Amended Complaint consists mostly of grievances filed complaining of mail opened outside of his presence. (*See* Dkt. # 19, Exh. 3).  In response to the grievances, Plaintiff was generally  informed that his mail was being opened in accordance with DOC policy 450.100 and 590.500.  Those policies govern the opening of inmate mail and legal mail and provide that all incoming and outgoing mail may be inspected by facility staff for contraband.  The Ninth Circuit in *Royse v. The Superior Court of the State of Washington*, 779 F.2d 573 (9th Cir. 1986) found that "the inspection of inmate mail for contraband does not constitute mail 'censorship' governed by the *Procunier [v. Martinez*, 416 U.S.

396 (1974)] test."

Plaintiff broadly and generally refers the Court to examples of "evidence" of his legal and privileged mail "being mishandled, opened and read outside" his presence.  (Dkt. # 100, Exh. 1 at 2). However, the Plaintiff makes no allegation and provides no evidentiary support upon which the Court may evaluate, for example, whether Defendants' inspection procedures delayed or hindered Plaintiff's ability to communicate with the courts or interfered with his ability to prepare legal documents, or violated his free speech or equal protection rights under the First or Fourteenth Amendments.  *See, e.g., Royse, supra.*   In addition, where there may have in fact been examples of legal mail opened outside the presence of Plaintiff in violation of Defendants' legal mail policy, there has been no showing that this rises to the level of a constitutional violation.

Accordingly, Plaintiff's challenge to the inspection procedures in this case fails as a matter of law and the undersigned recommends that Defendants be granted summary judgment of this claim.

## F.    Plaintiff's Claim to Be Placed in a Specific Institution

Plaintiff alleges generally that Defendants wrongfully transferred him from various institutions (SCCC) where his safety was at risk, and where there was no legal access (OCC, CCCC and CRCCC).  (Dkt. # 14, 9-10, 16).  Defendants argue that decisions regarding the placement and supervision of inmates are the unique province of prison officials and that Plaintiff has no constitutional right to a particular classification or custody level.

Prison administrators are in the best position to make decisions about prison security and the allocation of prison resources. *Turner*, 482 U.S. at 84-85; *Hudson v. Palmer*, 468 U.S. 517 (1984). A prison inmate has no constitutional right to a particular classification or custody level. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987), *citing Moody v. Daggett*, 429 U.S. 78 (1976); *see also Sandin v. Connor*, 515 U.S. 472 (1995) (even confinement in segregation does not trigger

REPORT AND RECOMMENDATION - 17

constitutional protection). Inmates also have no constitutional right to be incarcerated in a particular prison, and a transfer from one institution to another within a state's prison system does not implicate due process. *Meachum v. Fano*, 427 U.S. 215, 225 (1976).   However, prisoners may not be transferred in retaliation for exercising their First Amendment rights. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985).

Although Plaintiff alleges that Defendants knowingly transferred him to institutions with no legal access and where he was in danger, there is no summary judgment evidence indicating that the transfers were in retaliation for the exercise of his First Amendment rights. (*See also* the Court's analysis of Plaintiff's claim regarding his transfer under his claim of Eighth Amendment violation above).  On the other hand, the evidence does indicate that Defendants transferred Plaintiff at his request on several occasions so that Plaintiff could gain access to law library resources.  (Dkt. # 100, Exh. 1, Attach. A at 3).  Thus, as Plaintiff cannot show that his placement in any institution in DOC was a violation of his civil rights, the undersigned recommends that Defendants are entitled to judgment in their favor on this issue.

## G.  Plaintiff's Due Process Claim of Illegal Property Search and Seizure

Plaintiff alleges that Defendants unlawfully deprived him of personal property he possessed in his cell.  However, allegations do not state a claim under § 1983 when a plaintiff possesses an adequate post-deprivation remedy under state law. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517 (1984).  In Washington, a plaintiff may seek recovery for any such property loss under common law tort theories. *See Franklin v. State Welfare Division*, 662 F.2d 1337, 1345-46 (9th Cir. 1981); *Jeffries v. Reed*, 631 F. Supp. 1212, 1216 (E.D. Wa. 1986).[2]

---

[2]Plaintiff also has no claim of violation of the Fourth Amendment prohibition of unreasonable search and seizure as the Supreme Court has held that inmates do not possess such a right in relation

REPORT AND RECOMMENDATION - 18

Defendants argue that Plaintiff's due process claim is foreclosed because he has an adequate remedy under state law.   Under Washington law, Plaintiff may file a tort claim and a civil action against the State of Washington for the unlawful loss or destruction of his personal property. RCW 72.02.045 (state and/or state officials liable for the negligent or intentional loss of inmate property) and RCW 4.92.090.-.100 (state liable for the tortious conduct of state officials and employees).

Plaintiff has failed to state a claim for relief under § 1983 in relation to any alleged deprivation of personal property.  Accordingly, Defendants' motion for summary judgment on this claim should be granted.

**H.     Failure to Allege Personal Participation of Defendants/ Qualified Immunity**

Defendants urge that Plaintiff's claims must also be dismissed because he has failed to show how each defendant has caused or personally participated in causing the deprivation of a constitutional right under 42 U.S.C. § 1983.  Defendants also argue that Plaintiff's claims may be dismissed in the alternative because they are entitled to qualified immunity and because Plaintiff's claims for injunctive relief are now largely moot because he is no longer housed at OCC or CCCC. Except as to Plaintiff's claim of assault as to Defendants Barnes, Bernard and Foulkes, the Court has determined that Plaintiff has failed to established the deprivation of an actual constitutional right. Therefore, these issues need not be reached.  *See, e.g., Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

As to Plaintiff's claim of excessive force, the Court concludes that Plaintiff has sufficiently demonstrated how Defendant Barnes, Bernard and Foulkes caused the deprivation alleged. *See, e.g., Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981);  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).   After review of Defendants' conduct, the Court also

_____

to their prison cells. *Hudson*, 468 U.S. 417 (1984).

REPORT AND RECOMMENDATION - 19

1   concludes that they are not entitled to qualified immunity.

2       Prior to determining whether Defendants are entitled to qualified immunity, the Court must

3   first determine is plaintiff "has alleged the deprivation of an actual constitutional right at all." *Conn v.*

4   *Gabbert*, 526 U.S. 286, 290 (1999).  If not, the issue of qualified immunity does not come before the

5   Court. *Id.* at 293.  Under the doctrine of qualified immunity, state officials "performing discretionary

6   functions [are protected] from liability for civil damages insofar as their conduct does not violate

7   clearly established statutory or constitutional rights of which a reasonable person would have known.

8   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir.

9   1997).  To determine whether a state official is entitled to qualified immunity, the court must perform

10  a two part inquiry.  First, the court considers "whether the law governing the official's conduct was

11  clearly established." *Somers,* 109 F.3d at 617.  If the law was not clearly established at the time, "the

12  official is entitled to immunity from suit." *Id.*  If the law was so established, the court next asks

13  whether "under that law, a reasonable official would have believed the conduct was lawful." *Id.*

14  Thus, "an official is denied qualified immunity only if the law was clearly established and a reasonable

15  official could not have believed the conduct was lawful." *Id.*

16      The above inquiry "generally turns on the 'objective legal reasonableness' of the action,

17  assessed in light of the legal rules that were 'clearly established' at the time it was taken.'" *Grossman*

18  *v. City of Portland*, 33 F.3d 1200, 1208 (9th Cir. 1994) (citing *Anderson v. Creighton,* 483 U.S. 635,

19  639 (1987).  To defeat a claim of qualified immunity, the unlawfulness of the state official's conduct

20  must be "apparent." *Id.* (citing *Anderson,* 483 U.S. at 640).  This standard "'gives ample room for

21  mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate

22  the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation omitted); *Jeffers v. Gomez*, 267 F.3d

23  895, 910 (9th Cir. 2001).  Such an "accommodation for reasonable error" has been made "because

REPORT AND RECOMMENDATION - 20

'officials should not err always on the side of caution' because they fear being sued." *Hunter*, 502 U.S. at 229 (citation omitted).

As discussed above, there are material issues of fact relating to Plaintiff's allegations of excessive force as to Defendants Barnes, Bernard and Foulkes.  Reviewing all the facts in the light most favorable to Plaintiff, the undersigned concludes that reasonable persons would have known that ramming Plaintiff into the doorway while he was handcuffed and striking him in the scrotum would not be viewed as a good-faith effort to maintain or restore discipline, but rather an excessive use of physical force in violation of the Cruel and Unusual Punishments Clause forbidden by the Eighth Amendment.  Accordingly, as to Defendants Barnes, Bernard and Foulkes, the undersigned recommends that Defendants' motion for summary judgment based on qualified immunity be denied on Plaintiff's claim of excessive force.

## IV.  CONCLUSION

For the reasons stated above the Court should **GRANT in part and DENY in part** Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice, except as to Plaintiff's allegations of excessive force in violation of his Eighth Amendment rights against Defendants Barnes, Bernard and Foulkes.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 22,**

REPORT AND RECOMMENDATION - 21

1   **2007**, as noted in the caption.

2

3

4   DATED this 24th day of May, 2007.

5

6

7   Karen L. Strombom
    United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   REPORT AND RECOMMENDATION - 22